ILLINOIS CENTRAL RAILROAD CO. *v.* MRS. MINERVA SMITH.

[59 South. 87.]

1. APPEAL AND ERROR. *Review. Verdict. Conclusiveness. Carriers. Passengers. Punitive damages.*

Where a jury has been properly instructed their verdict will not be set aside, unless there is no evidence upon which to base it.

2. CARRIERS OF PASSENGERS. *Punitive damages.*

Where the employees of a railroad company have actual knowledge of the enfeebled condition of a passenger, and the importance of her taking passage on the train, and when the flagman informed the party in charge of such sick passenger, that she could not board the train at the day coach, and directed them to the sleeper, it was his duty to see that she had ample opportunity to board the sleeper, and under such circumstances his failure to perform this duty evinced a reckless indifference to the rights of the passenger, entitling her to punitive damages.

APPEAL from the circuit court of Lincoln county.
HON. D. M. MILLER, Judge.

Suit by Minerva Smith against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Longstreet,* for appellant.

We submit that while the roads should, of course, be liable for negligence, and should be penalized in punitive damages for wilful and wanton wrongs, the courts should be cautious in rendering decisions, the effects of which would be to deter the railroads from their commendable undertakings to meet the public demands, and which would have the effect of an embargo on rapid service and quick connection.

In this connection we quote from the opinion in the case of *Y. & M. V.* v. *Hardie,* 55 So. 971:

"The duty of the employees to a hundred other passengers on the train holding carriage contracts, is as sacred and obligatory as is the contract of the passengers whom the company has negligently carried by. Shall a railroad company be required to subordinate the public duty which it owes, the safety, the convenience, and the legal rights of a great number of passengers to the duty owing to one? These are questions involved in this case, but apparently overlooked by counsel. Every contract of carriage with a railroad company carries with it the obligation on the part of the company to carry the passengers to their place of destination; to afford reasonable opportunity to get on and off the train; to land passengers at a safe and proper place. Every passenger entering into such contract makes his contract in recognition of this right in every other passenger. For any violation of this contract on the part of the carrier actual damage may always be recovered. For any capricious, intentional, or wilful violation of the contract, punitive damages may be imposed; but we have not found one case that has ever held that punitive damages may be imposed under the facts of this case. Counsel cites authorities which they claim decide as they contended, but an examination of the authorities demonstrates the error of the contention. We must not forget the right of the many in pursuing the grievance of one.

"The employees of the carrier may be said to be the trustees of the rights of every passenger on the train. In considering the right of one all others are not to be forgotten. Each passenger has the right to reasonably expect that the train will be run on schedule time; each passenger may make his business arrangements predicated on that idea. The safe handling of the train may depend upon its schedule. Men of multiplied callings going from town to town, arrange their journeys on the schedule; they make their business engagements with

reference to the schedules; arangements as to mails are based on train schedules; plans for the reception of perishable freight; arrangements for the last sad rites of funerals, anxious passengers hurrying to sick relatives—all these may depend upon the maintenance of the schedule. Shall these considerations of public importance all be brushed aside at the instance of one passenger whom the carrier had negligently carried by his proper destination? If this court should hold with the contention of counsel for appellee, and say that punitive damages may be inflicted in this case, it gives its assent to a legal conclusion which seems to us illogical and unjust. In such cases, the infliction of punitive damages would impede and not promote the public good. It would lead to the endangerment and not the safe guarding of the traveling public.''

*Cassedy & Butler,* for appellees.

In the discussion of the case now before the court, being relieved of any minor complaints whatsoever, and required to defend the judgment recovered in the court below, on the whole record, the determination of this appeal will necessitate an understanding of all the facts upon which the judgment was rendered.

The counsel for the appellant neglect to take into consideration, in presenting their views of the evidence to this court, that in as much as the jury had decided in favor of appellee, and the court has sustained this finding that every presumption and every contradiction in every conflict in the evidence is to be solved in favor of the appellee, and that the sole question on the evidence in this court is, was there any evidence to support the verdict, and the judgment of the court passed on the verdict? In other words as put by this court the question is, ''Not is the verdict clearly right but is it manifestly wrong?'' *Naul* v. *Kirkman,* 13 S. & M. 599; *Prewett* v. *Coopwood,* 30 Miss. 369.

And again, "If a verdict is supported by evidence and the court cannot say the jury was unwarranted in reaching its conclusions, it will not be disturbed; although a finding for the opposite party would have been more satisfactory to the court." *Y. & M. V. R. R. Co.* v. *Williams,* 67 Miss. 18; *Kansas City R. R. Co.* v. *Cantrell,* 70 Miss. 329; *Moffet* v. *Robinson,* 2 Dec. 704.

"This court will not grant a new trial merely because the evidence preponderates against a verdict if there be proof legally conducing to the verdict." *Dickson* v. *Parker,* 3 Howard, 219; *Lea* v. *Guice,* 13 S. & M. 656.

It is the peculiar province of a jury, and gives credit to those facts and circumstances which in their judgment are entitled to the greatest consideration; and it is not for courts, in such cases, to rejudge their judgment. *Kellow* v. *Miller,* 39 Miss. 17.

On the evidence the court granted the appellee an instruction authorizing the jury, in its discretion to award punitive damages. The following cases uphold the action of the court on this record: *Wilson* v. *Railroad Co.,* 63 Miss. 352; *Railroad Co.* v. *Riley,* 68 Miss. 756; *Howell* v. *Shannon,* 80 Miss. 598; *Railroad Co.* v. *White,* 82 Miss. 120; *Railroad Co.* v. *Mitchell,* 83 Miss. 179; *Railroad Co.* v. *Hopper,* 83 Miss. 560; *Railroad Co.* v. *Reed,* 93 Miss. 583; *Telegraph Co.* v. *Hiller,* 93 Miss. 658; *Bunn* v. *Railroad Co.,* 93 Miss. 816.

COOK, J., delivered the opinion of the court.

Counsel for appellant vigorously assails the conflict in the evidence of the several witnesses for plaintiff below, and no doubt the same argument was made to the jury upon the trial.

It is not within the province of this court to set aside the verdict of the jury, unless it clearly appear from the record that there was no evidence upon which the verdict could have been based. It is peculiarly within the province of the jury to weigh and harmonize the

evidence.   There was ample evidence to support a ver-
dict for plaintiff.

The employees of the railroad company had actual
knowledge of the enfeebled condition of plaintiff, and
the importance of her taking passage upon that train,
and when the flagman informed the party in charge of
that sick woman that she could not board the train at the
day coach, and directed them to the sleeper, it was his
duty to see that she had ample opportunity to board the
sleeper, and under the circumstances his failure to per-
form this plain duty evinced a reckless indifference to
the rights of a passenger.   True, there was a sharp con-
flict in the evidence upon this point; but it was submitted
to the jury under proper instructions, and the verdict
was in accordance with this view of the case.

*Affirmed.*